Adam Kraut, Esq.
Attorney Id. No. 318482
Second Amendment Foundation
12500 N.E. Tenth Place
Bellevue, WA  98005
Akraut@SAF.org
(425) 454-7012

Joshua Prince, Esq.
Attorney Id. No. 306521
Civil Rights Defense Firm, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@CivilRightsDefenseFirm.com
(888) 202-9297 ext 81114
(610) 400-8439 (f)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT GREENE, and** | : | |
| | : | |
| **SECOND AMENDMENT** | : | Civil Action No. <u>1:24-cv-21</u> |
| **FOUNDATION,** | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| **v.** | : | Complaint – Civil Rights |
| | : | |
| | : | |
| **MERRICK B. GARLAND,** | : | |
| Attorney General of the United | : | |
| States | : | |
| | : | |
| **STEVEN M. DETTELBACH,** | : | |
| Director, Bureau of Alcohol, | : | |
| Tobacco, Firearms, and Explosives | : | |
| | : | |
| **CHRISTOPHER WRAY, and** | : | |
| Director of the Federal Bureau of | : | |
| Investigation | : | |
| | : | |
| **UNITED STATES OF** | : | |
| **AMERICA,** | : | |
| Defendants | : | |

**COMPLAINT**

COME NOW Plaintiffs Robert Greene ("Greene") and Second Amendment Foundation ("SAF"), on behalf of themselves and SAF's members, by and through their attorneys, Adam Kraut of the Second Amendment Foundation, and Joshua Prince of Civil Rights Defense Firm, P.C, and complain of Defendants as follows:

**INTRODUCTION**

1. This is an action to uphold Plaintiff Greene's and SAF's similarly situated members' right to keep and bear arms as guaranteed by the Second Amendment to the United States Constitution. This right "guarantee[s] the individual right to possess and carry" firearms and "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *District of Columbia v. Heller,* 554 U.S. 570, 635 (2008).

2. Plaintiff Greene is a responsible, law-abiding, peaceable individual who has sought and obtained a Pennsylvania Medical Marijuana ID card ("MMID"), pursuant to Pennsylvania's Medical Marijuana Act, 35 P.S. § 10231.101, *et seq.*

3. "The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether

or not future legislatures or (yes) even future judges think that scope too broad." *Id*. at 634-35.

4. The "central" – but not the only – holding of the Supreme Court in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald v. City of Chicago*, 561 U.S. 742, 780 (2010).

5. "The constitutional right to [keep and bear arms] is not 'a second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'" *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 70 (2022) (citing *McDonald*, 561 U. S., at 780).

6. "*Heller* . . . demands a test rooted in the Second Amendment's text, as informed by history." *Bruen*, 597 U.S. at 19 (citing *Heller*, 554 U.S. 570). Consistent with this demand, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id*. at 19.

7. Defendants have prohibited a particular class of persons, including Plaintiff Greene and SAF's similarly situated members, from acquiring, keeping, possessing, and utilizing firearms[1] and ammunition, in direct violation of the Second Amendment to the United States Constitution

---

[1] As used in this context throughout, Plaintiffs define "firearm" or "firearms" to mean handguns, rifles, and/or shotguns, including the frame or receiver of such, as set-forth by 18 U.S.C. § 921(a)(3).

8.  Specifically, even though the U.S. Supreme Court in *Bruen* declared that "[t]he test we set forth in *Heller* and apply today requires courts to assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding," *Bruen*, 597 U.S. at 26., Plaintiff Greene and SAF's similarly situated members are unable to acquire or possess a firearm pursuant to 18 U.S.C. § 922(g)(3) for which there is no historical analogue.

9.  Peaceable persons have always been free to carry arms for self-defense and other lawful purposes.

10. A violation of 18 U.S.C. § 922(g)(3) is a felony subject to up to 10 years' imprisonment and a fine of up to $250,000, for which a conviction would prohibit the Plaintiff Greene and SAF's similarly situated members from being able to purchase, possess, and utilize firearms and ammunition, pursuant to 18 U.S.C. § 924(a)(2).

11. To that end, the Firearms Transaction Record, ATF Form 4473 (5300.9) ("4473") provides the following statement to individuals seeking to purchase a firearm: "**Warning:** The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."

12. The current restrictions found in 18 U.S.C. §§ 922(g)(3), (d)(3), and their implementing regulations, as they pertain to medicinal marijuana, infringe

upon the individual's right to keep and bear arms, as they arbitrarily deny entire classes of persons in direct defiance of *Heller* and *Bruen* and lack any direct or analogous historical support deeply rooted in this nation's history and tradition.

## **PARTIES**

13. Plaintiff Greene, is a natural person, over the age of twenty-one, a citizen of Warren, Pennsylvania and the United States, and a member of the Second Amendment Foundation. In May of 2023, Greene applied for and received a MMID pursuant to Pennsylvania law. Greene has never been charged with nor convicted of any misdemeanor or felony offense.[2] Greene was duly elected as the District Attorney of Warren County, Pennsylvania in 2013 and continues to serve in that capacity until the expiration of his current term in December 2025. It is Greene's present intention and desire to purchase, possess, and utilize firearms and ammunition without violating the law. He is a responsible, law-abiding, peaceable citizen who, but for Defendants' active enforcement of 18 U.S.C. § 922(g)(3), would attempt to purchase, possess, and utilize firearms and ammunition for self-defense and all other lawful purposes.

14. Plaintiff Second Amendment Foundation is a nonprofit educational foundation incorporated under the laws of Washington with its principal

---

[2] *See* Pennsylvania State Police Access and Review background check, attached hereto and incorporated herein as Exhibit A.

place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the constitutional right to keep and bear arms and the consequences of gun control. SAF has more than 720,000 members and supporters nationwide, including in the Commonwealth of Pennsylvania, including Plaintiff Greene. SAF has members and supporters who possess MMIDs or would apply for MMIDs but for Defendants' enforcement of the challenged laws. SAF brings this action on behalf of its members who possess MMIDs, including Plaintiff Greene, who would purchase, possess, and utilize firearms and ammunition, and its members who possess firearms and ammunition who would apply for a MMID, but for Defendants' enforcement of the challenged laws including criminal penalties and loss of liberty and property.

15. Defendant Merrick B. Garland ("Attorney General" or "Garland") is being sued in his official capacity as the Attorney General of the United States. As Attorney General, Defendant Garland is responsible for executing and administering the laws, regulations, customs, practices, and policies of the United States. He is presently enforcing the laws, regulations, customs, practices, and policies complained of in this action. As Attorney General, Defendant Garland is ultimately responsible for supervising the functions and actions of the United States Department of Justice, including the Bureau

of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Federal Bureau

of Investigation ("FBI"), which are arms of the Department of Justice.

16.   Defendant Steven M. Dettelbach ("ATF Director" or "Dettelbach") is being

sued in his official capacity as Director of the ATF. ATF is responsible for,

*inter alia*, regulating and licensing the sale, possession, transfer, and

transportation of firearms and ammunition in interstate commerce. As

Director of ATF, Defendant Dettelbach is responsible for the creation,

implementation, execution, and administration of the laws, regulations,

customs, practices, and policies of the United States, in addition to the

promulgation/revision of the 4473. He is presently enforcing the laws,

regulations, customs, practices, and policies complained of in this action.

17.   Defendant Christopher Wray ("FBI Director" or "Wray") is being sued in his

official capacity as Director of the FBI. FBI is the agency responsible for

performing background checks for federal, state, and local law enforcement

authorities via the National Instant Check System ("NICS"). FBI is

responsible for maintaining the NICS database reflecting that individuals are

prohibited from acquiring, possessing, and utilizing a firearm. FBI sets forth

policies, procedures, regulations, and customs relating to NICS and

background checks for firearm purchasers. As Director of the FBI, Defendant

Wray is responsible for the execution of administration of these policies,

procedures, regulations, and customs, including those complained of in this

action.

18. Defendant United States of America ("United States") is a proper party in this action pursuant to 5 U.S.C. § 702.

## JURISDICTION AND VENUE

19. This case concerns certain subject matter under the original and exclusive jurisdiction of the federal courts of the United States of America.

20. This action seeks relief pursuant to 28 U.S.C. §§ 1331, 1343, 1346, 2201, 2202, 2412 and 5 U.S.C. § 702. Therefore, jurisdiction is founded on 28 U.S.C. § 1331, as this action arises under the Constitution and laws of the United States.

21. This Court has authority to award costs and attorney fees pursuant to 18 U.S.C. § 925A and 28 U.S.C. § 2412.

22. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e)(1)(B) and (C), as a substantial part of the events and omissions giving rise to the claims occurred in the Western District of Pennsylvania.

## CANNABIS'S REVOLUTIONARY HISTORY

### *A BRIEF HISTORY OF CANNABIS IN THE UNITED STATES*

23. Cannabis has enjoyed a rich history in the United States, dating back to the time of the founding.

24. Among those who cultivated and or used hemp for both personal and commercial purposes were the Founding Fathers, including George Washington, Thomas Jefferson, and Benjamin Franklin. ROBERT DEITCH,

HEMP – AMERICAN HISTORY REVISITED: THE PLANT WITH A DIVIDED HISTORY 19 (Algora Publishing 2003).

25.    Prior to the start of the Revolutionary War, medical uses for cannabis appeared in *The New England Dispensatory*, published in 1764. MITCH EARLEYWINE, UNDERSTANDING MARIJUANA A NEW LOOK AT THE SCIENTIFIC EVIDENCE 28 (Oxford University Press, Inc. 2002).

26.    Washington's diaries indicated he grew hemp at Mount Vernon for about 30 years and that he may have had a particular interest in the medicinal use of Cannabis. *Deitch*, at 25. (citing *Washington's Diary Notes*, Library of Congress (Volume 33, page 270) and *The Diaries of George Washington*, Houghton Mifflin Pub., 1925).

27.    In particular, several of Washington's diary entries read "'Began to separate the male from female plants at do [sic] – rather too late' (August 7, 1765), and, 'Pulling up the (male) hemp. Was too late for the blossom hemp by three weeks or a month.' (August 29, 1766)," indicating that it was likely he was trying to grow female plants, which produce a high tetrahydro-cannabinol (THC) content. *Id*. at 25 citing *The Diaries of George Washington*, Houghton Mifflin Publishing, 1925.[3]

---

[3] *See also* https://leafwell.com/blog/female-vs-male-weed-plants/ (last visited Jan. 9, 2024) ("Female cannabis plants also contain the lion's share of tetrahydrocannabinol (THC), the primary psychoactive compound in cannabis. Male plants, in contrast, contain only trace amounts of THC.").

28. In 1850, cannabis was added to *The U.S. Pharmacopoeia* where it remained until 1941. *Id.*

29. Ten years later, in 1860, the Ohio State Medical Society met and summarized medical uses of cannabis, which included treatments for pain, inflammation, and cough. *Id.* at 14.

30. The 1868 version of *U.S. Dispensatory* included pages of medical uses for tinctures of cannabis, including improved appetite, sexual interest, mental disorders, gout, cholera, hydrophobia, and insomnia. *Id.*

31. By the turn of the 20th century, marijuana infused medical products were more widely available. *Id.* at 14.

32. Use of cannabis as a recreational drug was relatively uncommon through most of the 19th century in the United States. The first mention of marijuana by an American author appeared in a poem written by John Greenleaf Whittier in 1854. Subsequent mentions of hashish[4] appear in two books authored by Bayard Taylor, a popular writer at the time, in the mid 1850s. The use of hashish was also documented in Fitz Hugh Ludlow's book, *The Hasheesh Eater*, in 1857 but few U.S. residents had any exposure to the recreational use of cannabis for many years. *Id.* at 23, 223-24.

---

[4] "A hallucinogenic drug preparation derived from the resin secreted by the flowering tops of cultivated female plants of the genus *Cannabis*." https://www.britannica.com/science/hashish (last visited Jan. 9, 2024).

33.  The practice of smoking marijuana was not on the radar of national policy until the 1930s. Prior to the federal government taking an interest, cities and states developed some laws and ordinances in the early 20th century. *Id*. at 224.

34.  California was among the first to ban marijuana in 1913 by outlawing the possession of "extracts, tinctures, or other narcotic preparations of hemp, or loco-weed, their preparations or compounds…" Cal. Stats. 1913, ch. 324 § 8a.

35.  In 1915, California amended its law to preclude the sale or possession of "flowering tops and leaves, extracts, tinctures and other narcotic preparations of hemp or loco weed (*Cannabis sativa*), Indian hemp" absent a prescription. Cal. Stats. 1915, ch. 604 § 2.

36.  Several other states and cities passed laws and ordinances against cannabis before 1920, including Massachusetts (1911), Maine (1913), Wyoming (1913), Indiana (1913), New York City (1914), Utah (1915), Vermont (1915), and Portland, Oregon (1915). Dale H. Gieringer, *The Origins of Cannabis Prohibition in California*, Contemporary Drug Problems, Vol 26 #2, (Summer 1999) (revised October 2019) at 29, *available at* https://www.canorml.org/wp-content/uploads/2022/05/Cal-Origins-MJ-Proh-2019.pdf.[5]

37.  In 1937, the federal government passed the Marihuana Tax Act, the first federal law regulating marijuana, which, *inter alia*, imposed a tax on persons importing, manufacturing, producing, compounding, selling, dealing in,

---

[5] *See also* Gieringer at 37. (Listing state and local marijuana laws prior to 1933).

dispensing, prescribing, administering, or giving away marijuana. The Act

also required payment of a tax for transfers of marijuana.[6]

38.   Thirty-nine years later, the U.S. Supreme Court struck down the Marihuana

Tax Act in *Leary v. United States*, 395 U.S. 6 (1969), finding the Act violated

the Fifth Amendment's protection against self-incrimination.

39.   Congress responded by passing the Controlled Substances Act, which

classified marihuana as a Schedule I narcotic.[7]

## REGULATION OF FIREARMS AND MARIJUANA

40.   It was not until 1938 that the first federal prohibition against individuals

from possessing firearms or ammunition were codified in the Federal

Firearms Act of 1938 ("FFA").[8]

41.   The statute specifically made it unlawful for any person who was under

indictment or convicted of a crime of violence or a fugitive from justice to

shop, transport or receive a firearm or ammunition. Moreover, the law

defined a crime of violence to mean:

> murder, manslaughter, rape, mayhem, kidnapping,
> burglary, housebreaking; assault with intent to kill,
> commit rape or rob; assault with a dangerous
> weapon, or assault with intent to commit any
> offense punishable by imprisonment for more than
> one year.

*Id.*

---

[6] *See* Pub. L. No. 75-238, 50 Stat. 551 (1937).
[7] *See* Pub. L. No. 91-513, 84 Stat. 1236 (1970).
[8] *See* Pub. L. No. 75-785, 52 Stat. 1250 (1938).

42. Twenty-three years later, in 1961, Congress took action to bar non-violent felons from possessing firearms and ammunition by amending the FFA to include individuals convicted of a crime punishable by imprisonment for a term exceeding one year.[9]

43. In 1968, Congress amended the law again with the passage of the Gun Control Act ("GCA"), this time expressly including a prohibition against the possession of firearms and ammunition by individuals who were "an unlawful user of or addicted to marihuana…"[10]

## CONGRESSIONAL APPROPRIATIONS

44. In each fiscal year since 2015, Congress has included provisions in appropriations acts that prohibit the Department of Justice ("DOJ") from using appropriated funds to prevent certain states and territories, along with the District of Columbia, from "implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana."[11]

45. On December 29, 2022, Public Law No. 117-328 was signed by President Biden.

46. Section 531 of Public Law No. 117-328 states:

> [n]one of the funds made available under this Act to the
> Department of Justice may be used, with respect to any
> of the States of Alabama, Alaska, Arizona, Arkansas,
> California, Colorado, Connecticut, Delaware, Florida,

---

[9] *See* Pub. L. No. 87-342, 75 Stat. 757 (1961).
[10] *See* Pub. L. No. 90-618, 82 Stat. 1213-2 (1968).
[11] *See*, https://www.congress.gov/117/plaws/publ328/PLAW-117publ328.pdf at 2. (last visited Jan. 9, 2024).

> Georgia, Hawaii, Illinois, Indiana, Iowa, Kentucky,
> Louisiana, Maine, Maryland, Massachusetts, Michigan,
> Minnesota, Mississippi, Missouri, Montana, Nevada,
> New Hampshire, New Jersey, New Mexico, New York,
> North Carolina, North Dakota, Ohio, Oklahoma,
> Oregon, Pennsylvania, Rhode Island, South Carolina,
> South Dakota, Tennessee, Texas, Utah, Vermont,
> Virginia, Washington, West Virginia, Wisconsin, and
> Wyoming, or with respect to the District of Columbia,
> the Commonwealth of the Northern Mariana Islands,
> the United States Virgin Islands, Guam, or Puerto Rico,
> to prevent any of them from implementing their own
> laws that authorize the use, distribution, possession, or
> cultivation of medical marijuana.

136 Stat. 4561.

## ATF'S POSITION PERTAINING TO MEDICAL MARIJUANA CARDS

47. On September 21, 2011, ATF released an open letter to all Federal Firearms
    Licensees ("FFLs") stating that "if you are aware that the potential transferee
    is in possession of a card authorizing the possession and use of marijuana
    under State law, then you have 'reasonable cause to believe' that the person
    is an unlawful user of a controlled substance. As such, you may not transfer
    firearms or ammunition to the person…"[12]

## ATF'S FORM 4473 (5300.9)

48. As part of the regulations promulgated under the Gun Control Act ("GCA"),
    27 C.F.R. § 478.101 requires that licensees "maintain firearms…records in
    such form and manner as is prescribed [by these regulations]."

---

[12] *See* https://www.atf.gov/firearms/docs/open-letter/all-ffls-sept2011-open-letter-marijuana-medicinal-purposes/download.

49. 27 C.F.R. § 478.124 provides "[a] licensed dealer shall not sell or otherwise dispose, temporarily or permanently, of any firearm to any person…unless the licensee records the transaction on a firearms transaction record, Form 4473…"

50. On April 7, 2016, ATF published a notice in the Federal Register soliciting feedback on the proposed changes to the Firearms Transaction Record, ATF Form 4473 (5300.9).[13]

51. Among the proposed changes was the addition of a warning to question 11(e), which asked, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" and stated that marijuana was still illegal under federal law.[14]

52. On November 14, 2016, ATF announced the new 4473 would be required on all firearms transactions beginning January 16, 2017.

53. Question 21(e) on the most recent revision of the 4473 (revised August 2023) asks, "Are you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?"[15]

54. Question 21(e) poses a warning directly following the question: "**Warning:** The use or possession of marijuana remains unlawful under Federal law

---

[13] https://www.govinfo.gov/content/pkg/FR-2016-04-07/pdf/2016-07970.pdf.
[14] *See*, Draft ATF Form 4473 (5300.9) https://www.atf.gov/resource-center/docs/form-example-firearms-transaction-record/download.
[15] *See* ATF Form 4473 (5300.9) https://saf.org/wp-content/uploads/2024/01/f_5300.9_4473_firearms_transaction_record_0.pdf.

regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside." *Id*. (emphasis original).

55. Thus, it has been Defendants' consistent position that even medicinal use of marijuana, as recommended by a doctor in any of the 38 states[16] that have legalized marijuana for medicinal purposes, is still federally prohibiting, thereby depriving Plaintiff Greene and SAF's similarly situated members of their constitutional right to keep and bear arms.

## **<u>FEDERAL LAW</u>**

56. 18 U.S.C. § 922(d)(3) provides:

> It shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile…
>
> is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…

57. 18 U.S.C. § 922(g)(3) provides:

> It shall be unlawful for any person…
>
> who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…
>
> to ship or transport in interstate or foreign commerce, or possess in or affecting commerce,
> any firearm or ammunition; or to receive
> any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

---

[16] *See* https://disa.com/map-of-marijuana-legality-by-state (last visited Jan. 9, 2024).

## FEDERAL REGULATIONS

58.  27 C.F.R. § 478.32(a)(3) provides:

> No <u>person</u> may ship or transport any firearm or ammunition in interstate or foreign commerce, or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce, or possess any firearm or ammunition in or affecting commerce, who:
>
> is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…

59.  27 C.F.R. § 478.32(d)(3) provides:

> No <u>person</u> may sell or otherwise dispose of any firearm or ammunition to any <u>person</u> knowing or having reasonable cause to believe that such person:
>
> is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))…

## REGISTERED MEDICAL MARIJUANA USERS IN PENNSYLVANIA

60.  On November 1, 2017, Pennsylvania's Department of Health opened its patient and caregiver registry.[17]

61.  In a report published May 15, 2020, the Department had 297,317 patients registered.[18]

---

[17] *See* https://www.health.pa.gov/topics/Documents/Programs/Medical%20Marijuana/DOH%20MM%20Official%20Two%20Year%20Report%20-%20May%2015%202020.pdf at 8 (last visited Jan. 9, 2024).

[18] *See* https://www.health.pa.gov/topics/Documents/Programs/Medical%20Marijuana/DOH%20MM%20Official%20Two%20Year%20Report%20-%20May%2015%202020.pdf (last visited Jan. 9, 2024).

62.   A report published November 2023 found that as of October 31, 2023, the

Department had 433,638 patients registered.[19]

### STATEMENT OF FACTS RELATING TO
### PLAINTIFF GREENE

63.   The foregoing paragraphs are incorporated herein as if set forth in full.

64.   Plaintiff Greene:

    a.   Is a United States citizen;

    b.   Is over the age of 21;

    c.   Is not under indictment;

    d.   Has never been convicted of a felony or misdemeanor crime of domestic

       violence;

    e.   Has never been convicted of a crime punishable by more than one (1)

       year;

    f.   Is not a fugitive from justice;

    g.   Is not, pursuant to state law, an unlawful user of any controlled

       substance;

    h.   Is not addicted to any controlled substance;

    i.   Has not been adjudicated a mental defective or been committed to a

       mental institution;

---

[19] *See* https://www.health.pa.gov/topics/Documents/Programs/Medical%20Marijuana/MMAB%20Program%20Update%20Data-Nov%2015,%202023.pdf (last visited Jan. 9, 2024).

j.   Has not been discharged from the Armed Forces under dishonorable
     conditions;

k.   Has never renounced his citizenship; and,

l.   Is not the subject of a restraining order relating to an intimate partner.

65.   Greene is a member of Plaintiff Second Amendment Foundation.

66.   Greene was duly elected as the District Attorney of Warren County in 2013
      and is currently serving as the District Attorney until December 2025.

67.   In May of 2023, Greene sought and obtained a MMID after being certified by
      an approved doctor.

68.   Greene has never been charged with nor convicted of any misdemeanor or
      felony offense. *See* Exhibit A.

69.   Greene desires and intends to lawfully purchase, possess, and utilize
      firearms and ammunition so that he may exercise his constitutional right to
      keep and bear arms for self-defense and all other lawful purposes.

70.   However, because of Defendants' active enforcement of 18 U.S.C. §§ 922(g)(3),
      (d)(3), and the regulations, customs, practices, and policies related thereto,
      including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), Defendants are
      precluding Greene from purchasing and possessing a firearm and/or
      ammunition, which criminalizes Greene's desired conduct under pain of
      criminal prosecution and incarceration for a period of up to 10 years and a
      fine of up to $250,000.

71. Thus, because of Greene's desire to seek and receive medical treatment using medical marijuana, Defendants contend that Greene is prohibited from purchasing and possessing a firearm and/or ammunition by operation of 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), which restrict Greene's right to acquire and possess firearms and/or ammunition for self-defense and all other lawful purposes.

72. Greene is a responsible, law-abiding, peaceable citizen with no history of violent behavior or other conduct that would suggest he poses any threat or danger.

73. Greene is currently abstaining from attempting to purchase, possess, and utilize a firearm and/or ammunition for fear of arrest, prosecution, incarceration, and/or fine, pursuant to 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), instigated and directed by Defendants, should he attempt the same.

74. While Greene desires to obtain a firearm and ammunition, he is unwilling to attempt to purchase or possess a firearm and/or ammunition because doing so would subject him to arrest, prosecution, fine, and incarceration, at Defendants' instigation and direction, for violating 18 U.S.C. § 922(g)(3), and the regulations, customs, practices, and policies related thereto.

## STATEMENT OF FACTS RELATING TO
## PLAINTIFF SECOND AMENDMENT FOUNDATION

75. The foregoing paragraphs are incorporated herein as if set forth in full.

76. Plaintiff SAF's similarly situated members:

   a. Are United States citizens;

   b. Are over the age of 21;

   c. Are not under indictment;

   d. Have never been convicted of any felony or misdemeanor crime of
   domestic violence;

   e. Have never been convicted of any crime punishable by more than one
   (1) year;

   f. Are not fugitives from justice;

   g. Are not, pursuant to state law, unlawful users of any controlled
   substance;

   h. Are not addicted to any controlled substance;

   i. Have not been adjudicated as mental defective or been committed to
   any mental institution;

   j. Have not been discharged from the Armed Forces under dishonorable
   conditions;

   k. Have never renounced their citizenship; and,

   l. Are not the subject of any restraining order relating to an intimate
   partner.

77. SAF's similarly situated members either (1) possess MMIDs and would purchase, possess, and utilize firearms and ammunition, or (2) own and possess firearms and ammunition and would apply for a MMID, but for Defendants' enforcement of the challenged laws including criminal penalties and loss of liberty and property.

78. SAF's similarly situated members desire and intend to lawfully purchase, possess, and utilize firearms and ammunition for self-defense and all other lawful purposes.

79. However, because of Defendants' active enforcement of 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), Defendants are precluding SAF's similarly situated members with MMIDs from purchasing and possessing a firearm and/or ammunition, which criminalizes their desired conduct under pain of criminal prosecution and incarceration for a period of up to 10 years and a fine of up to $250,000 and precluding SAF's similarly situated members who possess firearms and/or ammunition from applying for and receiving a MMID by way of the same enforcement.

80. Thus, because of SAF's similarly situated members' desire to seek and receive medical treatment using medical marijuana, Defendants contend that SAF's similarly situated members are prohibited from purchasing and possessing a firearm and/or ammunition or applying for and receiving a MMID, by operation of 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs,

practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), which restrict SAF's similarly situated members' rights to acquire and possess firearms and/or ammunition for self-defense and all other lawful purposes.

81. SAF's similarly situated members are responsible, law-abiding, peaceable citizens with no history of violent behavior or other conduct that would suggest they pose any threat or danger.

82. SAF's similarly situated members desire to obtain a firearm and ammunition, so that they may exercise their constitutional right to keep and bear arms for self-defense and all other lawful purposes.

83. SAF's similarly situated members are currently abstaining from attempting to purchase, possess, and utilize a firearm and/or ammunition, or applying for and receiving a MMID, for fear of arrest, prosecution, incarceration, and/or fine, pursuant to 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), instigated and directed by Defendants, should they attempt the same.

84. While SAF's similarly situated members desire to obtain a firearm and ammunition, or to apply for and receive a MMID, they are unwilling to attempt to purchase or possess a firearm and/or ammunition, or apply for a MMID, because doing so would subject them to arrest, prosecution, fine, and incarceration, at Defendants' instigation and direction, for violating 18 U.S.C.

§ 922(g)(3), and the regulations, customs, practices, and policies related

thereto.

**COUNT I: 18 U.S.C. §§ 922(g)(3), (d)(3) ARE UNCONSTITUTIONAL
FACIALLY AND *AS-APPLIED*
PURSUANT TO THE SECOND AMENDMENT
(*Plaintiffs v. Defendants*)**

85.   The foregoing paragraphs are hereby incorporated herein as if set forth in

full.

86.   The Second Amendment states that "the right of the people to keep and bear

arms shall not be infringed."

87.   The Supreme Court has held that the right to keep and bear arms is a

fundamental right, the core of which is for self-defense, *Heller*, 554 U.S. at

581, which is and has always been key to "our scheme of ordered liberty,"

*McDonald*, 561 U.S. at 767-68.

88.   Because "*Heller* . . . demands a test rooted in the Second Amendment's text,

as informed by history," *Bruen*, 597 U.S. at 19 (citing *Heller*, 554 U.S. 570),

"the government must affirmatively prove that its firearms regulation is part

of the historical tradition that delimits the outer bounds of the right to keep

and bear arms," *id.*

89.   Here, Plaintiff Greene and SAF's similarly situated members are completely

barred from their fundamental right to keep and bear arms due to their

desire to use medical marijuana.

90.   There is *no* historical tradition of categorically banning individuals from

keeping and bearing arms due to their use of a medicinal substance.

91. Plaintiff Greene and SAF's similarly situated members, are responsible, law-abiding, peaceable citizens of Pennsylvania and the United States that would like to purchase, possess, and utilize firearms and ammunition for self-defense and all other lawful purposes without being subjected to criminal prosecution of a felonious nature.

92. Defendants have violated Plaintiff Greene's and SAF's similarly situated members' right to keep and bear arms by precluding them from being able to purchase, possess, and utilize firearms and ammunition because of their enforcement of 18 U.S.C. §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto.

93. Defendants' enforcement of §§ 922(g)(3), (d)(3), and the regulations, customs, practices, and policies related thereto, including, but not limited to, 27 C.F.R. §§ 478.32(a)(3), (d)(3), are an infringement and an impermissible burden on Plaintiff Greene's and SAF's similarly situated members' right to keep and bear arms pursuant to the Second Amendments of the U.S. Constitution, especially in light of the fact that the right "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635.

94. Therefore, as a direct and proximate result of the above infringement and impermissible burden on Plaintiff Greene's and SAF's similarly situated members' Second Amendment rights, Plaintiffs, and those similarly situated,

have suffered – and continue to suffer – from an unlawful deprivation of their
fundamental constitutional right to keep and bear arms.

95. Plaintiffs have incurred nominal damages, attorney fees, and costs as a direct
result of prosecuting the present court action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court
enter judgment in their favor and against Defendants, as follows:

a) Declare that 18 U.S.C. §§ 922(g)(3), (d)(3), and all related laws, regulations,
policies, and procedures, including, but not limited to, 27 C.F.R. §§
478.32(a)(3), (d)(3), violate Plaintiff Greene's and SAF's similarly situated
members' right to keep and bear arms as guaranteed by the Second
Amendment to the United States Constitution;

b) Preliminarily, and thereafter permanently, enjoin Defendants, their officers,
agents, servants, employees, and all persons in active concert or participation
with them from enforcing against Plaintiff Greene and SAF's similarly
situated members 18 U.S.C. §§ 922(g)(3), (d)(3), and all related laws,
regulations, policies, and procedures, including, but not limited to, 27 C.F.R.
§§ 478.32(a)(3), (d)(3), that would impede or criminalize Plaintiff Greene's
and SAF's similarly situated members' exercise of their right to keep and
bear arms;

c) Declare that 18 U.S.C. §§ 922(g)(3), (d)(3), and all related laws, regulations,
policies, and procedures, including, but not limited to, 27 C.F.R. §§

478.32(a)(3), (d)(3), *as-applied* to Plaintiff Greene and SAF's similarly

situated members violate their right to keep and bear arms as guaranteed by

the Second Amendment to the United States Constitution;

d) Preliminarily, and thereafter permanently, enjoin Defendants, their officers,

agents, servants, employees, and all persons in active concert or participation

with them from enforcing against Plaintiff Greene and SAF's similarly

situated members 18 U.S.C. §§ 922(g)(3), (d)(3), and all related laws,

regulations, policies, and procedures, including, but not limited to, 27 C.F.R.

§§ 478.32(a)(3), (d)(3), that would impede or criminalize Plaintiff Greene's

and SAF's similarly situated members' exercise of their right to keep and

bear arms, *as-applied* to them;

e) Award Plaintiffs nominal damages, and pursuant 18 U.S.C. § 925A and 28

U.S.C. § 2412, costs, attorney fees, and expenses to the extent permitted; and,

f) Grant any and all other equitable and/or legal remedies this Court may see

fit.

Respectfully Submitted,

/s/ Adam Kraut

Adam Kraut, Esq.
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, WA  98005
Akraut@SAF.org
(425) 454-7012

Joshua Prince, Esq.
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road

Bechtelsville, PA 19505
Joshua@Civilrightsdefensefirm.com
(888) 202-9297 ext 81114
(610) 400-8439 (f)