IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT GREENE**, *et al.* | : | |
| Plaintiffs | : | |
| v. | : | Civil Action No. 1:24-cv-00021-CB |
| **MERRICK B. GARLAND**, *et al.* | : | |
| Defendants | : | |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' NOTICE OF SUPPLEMENTAL AUTHORITY

Plaintiffs respectfully submit this Response to Defendants' Notice of Supplemental Authority (Doc. 26).

*First*, in relation to the U.S. Supreme Court's decision in *U.S. v. Rahimi*, 144 S. Ct. 1889, 1894 (2024), it is important to note that the Court considered whether a law *temporarily* prohibiting an individual from possessing a firearm was constitutional, where such deprivation is limited in duration, only occurring after a hearing where the defendant is provided due process, and when the court order includes a finding that the individual "represents a credible threat to the physical safety of [an] intimate partner." In holding that "[a]n individual found by a court to pose a credible threat to the physical safety of another may be temporarily disarmed consistent with the Second Amendment" (*id.*, at 1903), the Court reaffirmed the analysis provided in *New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1 (2022) that "when a firearm regulation is challenged under the Second Amendment, the Government must show that the restriction 'is consistent with the Nation's

historical tradition of firearm regulation'."[1] *Id.,* at 1896 (citing *Bruen,* 597 U.S. at 24). The Court went to declare:

> As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances" … Why and how the regulation burdens the right are central to this inquiry. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin."

*Id.*, at 1898 (citations omitted).

In finding that Rahimi could be temporarily prohibited as a result of surety and "going armed" laws, the Court emphasized that such was a result of the "why and how" analysis, as the "regulations target[ed] individuals who *physically threatened others,*" (*id.,* at 1899 (emphasis added)) and "reject[ed] the Government's contention that Rahimi may be disarmed simply because he is not 'responsible'." *Id.*, at 1903. Specifically, in relation to the surety

---

[1] It bears noting that the Court focused on laws enacted around the time of the ratification of the Second Amendment in 1791. This is consistent with the Third Circuit's holding in *Lara v. Comm'r Pennsylvania State Police*, 91 F.4th 122, 134 (3d Cir. 2024) that the Second Amendment must be "understood according to its public meaning in 1791."

laws, they permitted "magistrates to require individuals suspected of future misbehavior to post a bond…[and if] an individual failed to post a bond, he would be jailed." *Id.*, at 1900. In relation to "going armed" laws, these were laws "for punishing those who had menaced others with firearms;" whereby, if convicted, the individual could be punished by "forfeiture of the arms and imprisonment." *Id.,* at 1900-1901. The Court, in distinguishing *Bruen*'s analysis of the same surety and "going armed laws," explained that "Section 922(g)(8) restricts gun use to mitigate *demonstrated threats of physical violence*, just as the surety and going armed laws do." *Id.,* at 1901 (emphasis added).

Thus, like 18 U.S.C. § 922(g)(8), the historical surety and "going armed" laws only permitted the deprivation of one's Second Amendment rights *after* a hearing, providing for due process,[2] and then, only temporarily,[3] if at all, as the individual had to be offered an opportunity to post a bond or request exception for a purpose such as self-defense;[4] whereby, if the bond was posted or exception granted, the individual would continue to retain his Second Amendment rights. However, in

---

[2] As the Court acknowledged, surety laws provided "significant procedural protections … [because before] the accused could be compelled to post a bond … a complaint had to be made to a judge or justice of the peace by 'any person having reasonable cause to fear' that the accused would do him harm or breach the peace. The magistrate would take evidence, and—if he determined that cause existed for the charge—summon the accused, who could respond to the allegations. Bonds could not be required for more than six months at a time, and an individual could obtain an exception if he needed his arms for self-defense or some other legitimate reason." *Id.*, at 1900.

[3] *Id.*, footnote 2, *supra*.

[4] *Id.*, footnote 2, *supra*.

relation to this matter, 18 U.S.C. § 922(g)(3) does not provide for *any* form of due process, either *pre-* or *post*-deprivation, the prohibition is permanent for as long as the individual utilizes a controlled substance,[5] and there exists no nexus between an unlawful user of a controlled substance and the establishment that the individual poses a physical threat to another (*i.e.* dangerousness of the individual). Moreover, in performing the "why and how" analysis, it was the combination of due process protections being provided, where a judicial determination was made that the individual posed a threat to another, *along with* the temporary nature of the deprivation that resulted in Section 922(g)(8)'s constitutionality; none of which is provided for in relation to Section 922(g)(3).

*Second*, to the best of the undersigned's knowledge, every petition for certiorari that was briefed and pending before the Court, regardless of outcome below and whether a civil or criminal matter, was GVR'ed for the lower courts to apply *Rahimi*, before consideration by the Court.

*Third*, in relation to *Delaware State Sportsmen's Ass'n v. Delaware Department of Safety & Homeland Security*, No. 23-1633, 2024 WL 3406290 (3d Cir. July 15, 2024)("DSSA"), setting aside that the panel decision in *DSSA* appears to be at odds with other precedent from the Third Circuit and may result in a request for reconsideration *en banc*,[6] the Third Circuit explicitly acknowledged that

---

[5] Defendants further prohibit an individual who has ceased utilizing a controlled substance for a one-year period of time, pursuant to definition of an "[u]nlawful user of or addicted to any controlled substance" in 27 C.F.R. § 478.11.

[6] *See e.g.*, *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 113, 114 (3d Cir. 2013); *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 143 (3d Cir. 2017).

Fed.R.Civ.P. 65(a)(2) allows this Court to advance this matter to a trial on the merits in order to "vindicate constitutional rights promptly" and that "[o]ften, 'it would be more efficient to consolidate the trial on the merits with the motion for a preliminary injunction under Rule 65(a)(2).'" 2024 WL 3406290, at *9 (internal citations omitted). In this matter, Plaintiffs explicitly requested that this Court, pursuant to Rule 65, advance the matter to a trial on the merits (Doc. 16, pgs. 27-28). As there are no factual disputes in this matter, it is appropriate for this Court to "vindicate [the Plaintiffs] constitutional rights promptly," by issuing a final judgment.

Even if, *arguendo*, this Court was not inclined to render a final judgment, while Defendants are correct that the Third Circuit stated that a preliminary injunction is an extraordinary remedy, there are several key distinctions between the case before this Court and *DSSA*.

Specifically, in *DSSA* the Third Circuit found there was no irreparable harm to the challengers because they "did not allege that Delaware has tried to enforce the disputed laws against them or to seize the guns or magazines they already own." 2024 WL 3406290, at *7. Compared to the matter before the Court, as alleged in Plaintiffs' Amended Complaint, are *enforcing* the challenged laws and regulations against the Plaintiffs and Second Amendment Foundation's members. Doc. 7, ¶¶ 3, 14-18, 72, 88, 95, 97, 112-113. In no better point of fact, the Amended Complaint, ¶¶ 17, 18, declare that Defendants Garland and Dettelbach are "presently enforcing the laws, regulations, customs, practices, and policies complained of in this action."

Further, it is important to note that the Third Circuit explicitly stated that "[w]e also limit our analysis of irreparable injury to *this preliminary injunction*" and "do not hold that Second Amendment harms…cannot be irreparable." *Id*., at *8 (emphasis added).

Dated: July 19, 2024

Respectfully Submitted,

/s/ Adam Kraut

Adam Kraut, Esq.
PA Bar No. 318482
SECOND AMENDMENT FOUNDATION
12500 N.E. Tenth Place
Bellevue, WA 98005
Akraut@SAF.org
(425) 454-7012

Joshua Prince, Esq.
PA Bar No. 306521
CIVIL RIGHTS DEFENSE FIRM, P.C.
646 Lenape Road
Bechtelsville, PA 19505
Joshua@Civilrightsdefensefirm.com
(888) 202-9297 ext 81114
(610) 400-8439 (f)