**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ROBERT GREENE, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 1:24-21 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| MERRICK B. GARLAND, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  MEMORANDUM**

For the reasons stated below, Plaintiffs' Motion for Preliminary Injunction (Doc. 11) will

be DENIED.

**A.  Procedural Background**

Plaintiffs, Robert Greene ("Greene"), James Irey ("Irey") and the Second Amendment

Foundation ("SAF") (collectively "Plaintiffs") filed a First Amended Complaint (Doc. 7) on

March 6, 2024 against Defendants Merrick B. Garland, Attorney General of the United States,

Steven M. Dettelbach, Director, Bureau of Alcohol, Tobacco, Firearms and Explosives,

Christopher Wray, Director of the Federal Bureau of Investigation and the United States of

America (collectively "Defendants"), seeking a declaration that 18 U.S.C. §§ 922(g)(3) and

(d)(3) are unconstitutional both facially and as applied to Plaintiffs and SAF's similarly situated

members.  Specifically, Plaintiffs contend that Defendants' enforcement of these statutory

provisions violates their Second Amendment rights by precluding their ability to purchase,

possess and utilize firearms and ammunition, if they hold a Medical Marijuana Identification

Card ("MMID") and use medical marijuana for treatment pursuant to Pennsylvania law.  On

March 19, 2024, Plaintiffs filed the instant Motion for Preliminary Injunction (Doc. 11) seeking to enjoin Defendants' enforcement of 18 U.S.C. §§ 922(g)(3), (d)(3) and all related laws, regulations, policies and procedures, including, but not limited to 27 C.F.R. §§ 478.32(a)(3) and (d)(3).

After briefing was complete, the Court scheduled a motion hearing for May 6, 2024. (Doc. 23).  On April 29, 2024, however, the parties filed a joint stipulation of facts and exhibits for the Court to consider that rendered an evidentiary hearing unnecessary.  (Doc. 24).  Given this stipulation, and at the behest of the parties, the Court canceled the hearing and took the motion under advisement.  (Doc. 25).

**B.  <u>Stipulated Facts</u>**

The parties have stipulated to the material facts as follows:

Marijuana is currently listed in the Controlled Substances Act (18 U.S.C. § 801 *et seq.*) ("CSA") as a Schedule I controlled substance.  18 U.S.C. § 922(d)(3) provides that "[i]t shall be unlawful for any person to sell or otherwise dispose of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile … is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))."  18 U.S.C. § 922(g)(3) provides that "[i]t shall be unlawful for any person … who is an unlawful user of or addicted to any controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)) ... to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce."

27 C.F.R. § 478.11 provides, in relevant part:

*Unlawful user of or addicted to any controlled substance.* A person who uses a controlled substance and has lost the power of self-control with reference to the use of controlled substance; and any person who is a current user of a controlled substance in a manner other than as prescribed by a licensed physician.  Such use is not limited to the use of drugs on a particular day, or within a matter of days or weeks before, but rather that the unlawful use has occurred recently enough to indicate that the individual is actively engaged in such conduct. A person may be an unlawful current user of a controlled substance even though the substance is not being used at the precise time the person seeks to acquire a firearm or receives or possesses a firearm. An inference of current use may be drawn from evidence of a recent use or possession of a controlled substance or a pattern of use or possession that reasonably covers the present time, e.g., a conviction for use or possession of a controlled substance within the past year; multiple arrests for such offenses within the past 5 years if the most recent arrest occurred within the past year; or persons found through a drug test to use a controlled substance unlawfully, provided that the test was administered within the past year. For a current or former member of the Armed Forces, an inference of current use may be drawn from recent disciplinary or other administrative action based on confirmed drug use, e.g., court-martial conviction, nonjudicial punishment, or an administrative discharge based on drug use or drug rehabilitation failure.

ATF also has promulgated a regulation stating that no person may ship, receive, or possess a firearm in interstate or foreign commerce who is an unlawful user of or addicted to any controlled substance as defined in the CSA, 27 C.F.R. § 478.32(a)(3), or transfer a firearm to a person knowing or having reasonable cause to believe that such a person is such an unlawful user of or addicted to any controlled substance as defined in the CSA, 27 C.F.R. § 478.32(d)(3).

The ATF's Form 4473, which is required to be executed by any individual seeking to purchase a firearm from a federal firearms licensee ("FFL") or have a firearm transferred to him/her from an FFL, consistent with the aforementioned laws and regulations, asks the transferee/buyer in question 21.f., "[a]re you an unlawful user of, or addicted to, marijuana or any depressant, stimulant, narcotic drug, or any other controlled substance?" and immediately thereafter provides: "**Warning**: The use or possession of marijuana remains unlawful under Federal law regardless of whether it has been legalized or decriminalized for medicinal or recreational purposes in the state where you reside."  *See* Doc. 24 Exhibit F.

ATF's Open Letter of September 21, 2011, declares, *inter alia*, that if an FFL is "aware that the potential transferee is in possession of a card authorizing the possession and use of marijuana under State law, then you have 'reasonable cause to believe' that the person is an unlawful user of a controlled substance.  As such, you may not transfer firearms or ammunition to the person, even if the person answered 'no' to question [21.f.] on the ATF Form 4473." *See* Doc. 24 Exhibit G.[1]

It is Defendants' position that if a recipient of a Pennsylvania MMID uses medical marijuana – such that the person is an unlawful user of marijuana pursuant to 27 C.F.R. § 478.11 – such a person is prohibited by 18 U.S.C. § 922(g)(3) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce. It is Defendants' position that if a potential firearms transferor is aware that a potential firearms transferee possesses an MMID card, the potential firearms transferor has reasonable cause to believe that the potential firearms transferee is an unlawful user of or addicted to any controlled substance as defined in the CSA, and it is unlawful under 18 U.S.C. § 922(d)(3) for the potential firearms transferor to transfer a firearm to the potential firearms transferee.

It is Defendants' position that if Plaintiff Greene, as an MMID cardholder and user of medical marijuana pursuant to Pennsylvania law, uses medical marijuana such that he is an unlawful user of marijuana pursuant to 27 C.F.R. § 478.11, he is prohibited by 18 U.S.C. § 922(g)(3) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been

---

[1] The ATF 4473 Form has been revised, several times, since issuance of the September 21, 2011 Open Letter and, as a result, the question has been moved from question 11.e. to question 21.f.

shipped or transported in interstate or foreign commerce.  It is Defendants' position that if a potential firearms transferor is aware that Plaintiff Greene possesses an MMID card, the potential firearms transferor has reasonable cause to believe that Plaintiff Greene is an unlawful user of or addicted to any controlled substance as defined in the CSA, and it is unlawful under 18 U.S.C. § 922(d)(3) for the potential firearms transferor to transfer a firearm or ammunition to Plaintiff Greene.

It is Defendants' position that if Plaintiff Irey uses marijuana (including medical marijuana pursuant to Pennsylvania law) such that he is an unlawful user of marijuana pursuant to 27 C.F.R. § 478.11, he would be prohibited by 18 U.S.C. § 922(g)(3) to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.  It is Defendants' position that if Plaintiff Irey obtained an MMID card and a potential firearms transferor was aware that Plaintiff Irey possessed an MMID card, the potential firearms transferor would have reasonable cause to believe that Plaintiff Irey is an unlawful user of or addicted to any controlled substance as defined in the CSA, and it would be unlawful under 18 U.S.C. § 922(d)(3) for the potential firearms transferor to transfer a firearm or ammunition to Plaintiff Irey.

Plaintiffs are challenging the application of all of the aforementioned laws, regulations and promulgated forms.

## C.  Analysis

Under Fed. R. Civ. P. 65, a plaintiff moving for a preliminary injunction must clearly show:  "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted."  Reilly v. City of Harrisburg, 858 F.3d 173, 176

(3d Cir. 2017).  "If these two 'threshold' factors are met, a court then considers the remaining

two factors − '(3) the possibility of harm to other interested persons from the grant or denial of

the injunction, and (4) the public interest' − and determines, on balance of all four factors,

whether to grant the requested preliminary relief."  Id.  A Court may deny a preliminary

injunction under any one of these four factors.  See Delaware State Sportsmen's Ass'n v.

Delaware Dep't of Safety & Homeland Security, 108 F.4th 194, 203 (3d Cir. 2024).

Here, Plaintiffs spend the bulk of their briefing arguing the likelihood of success on the

merits.  See Pl. Br. Supp. (Doc. 16) at 9-21.  Plaintiffs give shorter shrift to the irreparable harm

element, contending simply that the constitutional harm at issue in itself presumes irreparable

harm.  See id. at 21-22 (citing authority supporting a presumption of irreparable constitutional

harm).  In a Second Amendment decision issued after the parties' briefing, however, the Court of

Appeals refused to heed "that siren's song."  Delaware State Sportsmen's Ass'n, 108 F.4th at

202.  Cautioning that "[a] preliminary injunction is not a shortcut to the merits," the Court

explained:

> The challengers bear the burden of proving irreparable injury; yet they ask us to lift
> that burden from their shoulders by presuming all constitutional harms irreparable.
> We will not.  Presuming irreparable harm is the exception, not the rule.  Plus, the
> presumption they propose would trample on traditional principles of equity.

Id. at 203.  In so holding, the Court declined to follow the contrary holdings from other

jurisdictions on which Plaintiffs rely.  See id. ("True, our sister circuits have presumed harm in

various settings. . . . We respectfully decline to do the same.").  Plaintiffs' citation to the

Circuit's First Amendment jurisprudence as support for its position likewise is unpersuasive, as

the Court of Appeals firmly distinguished First Amendment cases as unique.  See id. at 204

("[W]hen weighing preliminary injunctions, courts may presume that suppressing speech or

worship inflicts irreparable injury, . . . this presumption is the exception, not the rule.  We will
not extend it.").

Additionally, Plaintiffs have failed to identify any specific circumstances that would
establish irreparable harm under the stipulated facts of this case.  The Court likewise finds no
such supporting facts in the record.  As Defendants accurately observe in their opposition brief,
Plaintiff Irey has not yet obtained a MMID card and currently possesses his firearms and retains
the ability to use them for all lawful purposes, including self-defense.  Although Plaintiff Greene
alleges that he can neither obtain nor possess firearms due to his MMID card, such prohibition is
temporary, and he could regain those rights by ending his marijuana use.  Plaintiff Greene also
fails to allege a persuasive time-sensitive need to possess the desired firearms.  Moreover, neither
individual plaintiff has provided any evidence that they, or anyone similarly-situated, have an
immediate medical need to use marijuana in lieu of an alternative medical treatment.  In short, no
matter the ultimate outcome of this case, Plaintiffs have not shown that they have suffered any
harms "beyond ones that can be cured after final judgment," or that the court otherwise "will be
unable to decide the case or give them meaningful relief" absent a preliminary injunction.  Id. at
205; *see also* id. ("We do not hold that Second Amendment harms, or constitutional harms
generally, cannot be irreparable.  Still, the scant evidence before us here hardly shows that the
challengers' harm is.").

Because Plaintiffs cannot demonstrate irreparable harm, the Court need not, and will not,
examine Plaintiffs' likelihood of success on the merits.  *See* id. at 206 ("A preliminary injunction
is not a first bite at the merits.  Rather, it is an extraordinary equitable remedy designed to protect
the court's ability to see the case through.  It risks cementing hasty first impressions.").  As the
parties' briefing makes clear, the post-Bruen findings of our sister Circuits on the

constitutionality of Sections 922(g)(3) and (d)(3) are numerous and conflicting, with the majority upholding the statute.  *See, e.g.*, Def. Br. Opp. at 10-11 (citing cases); Pl. Reply Br. (Doc. 22) at 2-3.  Additionally, although the Court has considered the Supplemental Authority helpfully provided by the parties (Docs. 26–28), neither side has fully briefed the impact, if any, of the Supreme Court's decision in United States v. Rahimi, 602 U.S. __, 144 S. Ct. 1889 (2024), on the central issues in this case.  For all of these reasons, the Court heeds the Court of Appeals' admonition that "[a] rushed judgment is a dangerous one" and that "judges must be humble enough to stay their hands." Delaware State Sportsmen's Ass'n, 108 F.4th at 203.  For these reasons, and because "failing to grant interim relief would not moot this case," the Court declines to prejudge the merits at this juncture. *See* id.[2]

In accordance with the foregoing, the Court hereby enters the following:

## ORDER

Plaintiffs' Motion for Preliminary Injunction (**Doc. 11**) is **DENIED**.  Consistent with the Court's Order at Doc. 25, Defendants shall have twenty-one (21) days from the date of this Order to file a responsive pleading to Plaintiffs' First Amended Complaint.

IT IS SO ORDERED.

September 10, 2024                         s/Cathy Bissoon
                                          Cathy Bissoon
                                          United States District Judge
cc (via ECF email notification):

All Counsel of Record

---

[2] Although it is unnecessary to examine the two remaining factors – the public interest and a balancing of the equities – the Court finds that those elements lean in Defendants' favor as well for the well-articulated reasons set forth in Defendants' Opposition Brief. *See* Doc. 19 at 36-38. It also is unnecessary at this juncture to address Defendants' alternative contention that Plaintiff SAF lacks standing, and the Court expresses no opinion on the merits of that argument.