IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT GREENE,** *et al.* | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | Civil Action No. 1:24-cv-00021-CB |
| | : | |
| **MERRICK B. GARLAND,** *et al.* | : | |
| | : | |
| Defendants | : | |

## <u>PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY</u>

Plaintiffs respectfully submit this Notice of Supplemental Authority to notify the Court of a recent decision from the United States District Court for the Western District of Texas that is pertinent to the Plaintiffs' opposition to Defendants' pending Motion to Dismiss.

On December 30, 2024, the United States District Court for the Western District of Texas issued an opinion in *United States of America v. Adrian Gil, II*, No. EP-22-CR-00773. A copy of the opinion is attached hereto. In finding that 18 U.S.C. § 922(g)(3) was unconstitutional as-applied to Mr. Gil, the court quickly found that Mr. Gil, even as "a daily user of marijuana since age 14" (Op. at 25), was part of the people for purposes of the Second Amendment (Op. at 22) and then went on to hold that there does not exist a historical tradition/analogue of stripping individuals of their Second Amendment rights comparable to marijuana users. Specifically, the court declared that "the Government has not identified a class of persons at the Founding who were 'dangerous' for reasons comparable to marijuana users, like

Defendant." Op. at 24. Or stated slightly differently, "§ 922(g)(3) imposes a far

greater burden on [Defendant's] Second Amendment rights than our history and

tradition of firearms regulation can support." Op. at 25.

Dated: January 2, 2025                  Respectfully Submitted,

                                        /s/ Joshua Prince
                                        _____

                                        Joshua Prince, Esq.
                                        PA Bar No. 306521
                                        CIVIL RIGHTS DEFENSE FIRM, P.C.
                                        646 Lenape Road
                                        Bechtelsville, PA 19505
                                        Joshua@Civilrightsdefensefirm.com
                                        (888) 202-9297 ext 81114
                                        (610) 400-8439 (f)

                                        Adam Kraut, Esq.
                                        PA Bar No. 318482
                                        SECOND AMENDMENT FOUNDATION
                                        12500 N.E. Tenth Place
                                        Bellevue, WA 98005
                                        Akraut@SAF.org
                                        (425) 454-7012

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | EP-22-CR-00773-DB |
| | § | |
| ADRIAN GIL, II | § | |

## ORDER RECONSIDERING MOTION TO WITHDRAW GUILTY PLEA AND TO DISMISS INDICTMENT

### I.    INTRODUCTION

On this day, the Court reconsidered Defendant Adrian Gil II's ("Defendant") "Motion to Withdraw His Guilty Plea and Dismiss Indictment," ("Motion") filed on February 26, 2023, ECF No. 39[1]. This Court previously denied Defendant's Motion on July 5, 2023. *See* Memorandum Opinion and Order Denying Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment, ECF No. 44. However, in the years since Defendant filed his Motion and this Court decided such Motion, the law has changed significantly with regard to 18 U.S.C. § 922(g)(3), the statute under which Defendant is charged. For this reason, the Court has now decided to reconsider it.

In his Motion, Defendant moved the Court to "withdraw his plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) and ask[ed] this Court to dismiss the Indictment pursuant to Rule 12(b)(3)(B) due to recent and substantial changes in firearm regulation jurisprudence that render the statute he pleaded guilty to unconstitutional on its face and as applied to him." Mot. 1, ECF No. 39. The Government responded to Defendant's Motion and

---

[1] "ECF No." refers to the Electronic Case Filing ("ECF") number for documents docketed in this matter. When a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the page numbers assigned by the ECF system.

urged the Court to "deny the defendant's motion," without addressing the issue of whether Defendant should be allowed to withdraw his plea of guilty. *See* "Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment," ("Resp.") ECF No. 43.

The Court now reconsiders Defendant's Motion in light of the changes in the law since then. After examining the totality of the circumstances, the Court is of the opinion that Defendant has provided the Court with a "fair and just reason" for withdrawing his plea, and also finds that the statute under which the Defendant has been charged is unconstitutional as applied to him. In reaching its decision, the Court considered the following pleadings: Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment (ECF No. 39), Government's Response in Opposition to Defendant's Motion to Dismiss the Indictment (ECF No. 43), Government's Supplemental Brief (ECF No. 78), and Supplemental Brief of Defendant-Appellant (ECF No. 79). The Court will now address each issue in turn.

## II.    BACKGROUND AND PROCEDURAL HISTORY

On July 15, 2021, the El Paso Police Department ("EPPD") responded to a call at Defendant's house in El Paso, Texas in reference to an alleged fight involving a firearm or gun. *See* Mot. 1-2, ECF No. 39; *see also* Resp. 5, ECF No. 43. When officers entered the home, "they observed a large vacuum sealed clear plastic bag that contained marijuana." Mot. 2, ECF No. 39. After conducting a sweep of the home, officers found a second bag of marijuana. *Id.* Officers subsequently obtained a search warrant, "found multiple guns inside [Defendant's] home," and contacted the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). *Id.*; Resp. 5, ECF No. 43. After contacting ATF, an officer from EPPD as well as an agent from ATF arrested Defendant, and then proceeded to conduct a custodial interview "to determine the facts as they

2

relate to the firearms," and "to determine if violations of federal firearms laws had been committed." *Id.* at 5–6. The officers spoke with Defendant, who "admitted to being a daily user of marijuana since age 14." *Id.* at 6. Based on Defendant's admission, the law enforcement officers determined that Defendant was in violation of 18 U.S.C. § 922(g)(3). *Id.* Defendant allegedly told the officers that he "knew it was illegal to have a medical marihuana card from New Mexico and have a firearm," and also claimed that he "just like[s] good weed." *Id.*

On June 1, 2022, Defendant Adrian Gil, II was charged by indictment with the offense of being an unlawful user of a controlled substance while possessing a firearm in violation of 18 U.S.C. § 922(g)(3) and 18 U.S.C. § 924(a)(2). *See* Sealed Indictment, ECF No. 4. Defendant was arrested pursuant to a warrant on June 15, 2022. *See* Arrest Warrant, ECF No. 17. Defendant was released from custody pursuant to an Appearance Bond on June 23, 2022. *See* Appearance Bond, ECF No. 15. Defendant was eventually set for a Plea Hearing on Thursday, November 10, 2022 at 10:30 AM. *See* Order Resetting Plea – In Person, ECF No. 27. Defendant pleaded guilty to the single-count indictment on November 10, 2022. *See* Minute Entry for Re-arraignment, ECF No. 30.

After his re-arraignment/plea hearing, Defendant was subsequently set for an in-person sentencing in this Court on Wednesday, March 1, 2023 at 9:30 a.m. *See* Order Resetting Sentencing, ECF No. 38. While Defendant remained on bond, pending sentencing, Defendant filed his original "Motion to Withdraw Plea of Guilty and Dismiss Indictment," ECF No. 39. The parties requested extra time to respond to Defendant's Motion, which this Court allowed. *See* Order Granting Motion for Extension of time to File Response, ECF No. 42. The Court eventually denied Defendant's original Motion on July 5, 2023. *See* Memorandum Opinion and

Order Denying Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment, ECF No. 44. Defendant was then set for an in-person sentencing hearing on July 19, 2023. Minute-Entry for Sentencing, ECF No. 45. Defendant was sentenced to 35 months of imprisonment and three years of supervised release on July 19, 2023. Judgment and Commitment, ECF No. 46.

After his sentencing, Defendant filed a "Notice of Appeal," on July 21, 2023, ECF No. 48. In addition to his Notice of Appeal, Defendant also filed a "Motion for New Trial," ECF No. 53 and a "Motion for Bond Pending Appeal," ECF No. 54, both filed on August 10, 2023. This Court subsequently denied Defendant's "Motion for New Trial," ECF No. 53, on September 15, 2023. *See* Order Denying Motion for New Trial, ECF No. 64. This Court granted Defendant's "Motion for Bond Pending Appeal," ECF No. 54, on September 15, 2023, and Defendant was once again allowed to remain on bond. *See* Order Granting Motion for Bond Pending Appeal, ECF No. 65.

Defendant Adrian Gil, II's case was then heard by the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"), and on May 15, 2024, the Fifth Circuit rendered its judgment. *See* Judgment and Mandate of the United States Court of Appeals, ECF No. 70. In its Mandate, the Fifth Circuit "[o]rdered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." *Id.* at 1. This Court now reverses its previous decision, Memorandum Opinion and Order Denying Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment, ECF No. 44, in accordance with the Fifth Circuit Mandate.

## III.   LEGAL STANDARDS

### A.   *Guilty Pleas*

Many criminal defendants plead guilty in their respective criminal cases. "To enter a knowing and voluntary guilty plea, a defendant must have full knowledge of what the plea connoted and of its consequences," *United States v. Hardy*, 838 Fed.Appx. 68, 74 (5th Cir. 2020). Federal Rule of Criminal Procedure 11 governs the entry of pleas, specifically subsections (c) and (d). "[T]he court must ensure the defendant understands the maximum possible penalty that he may face by pleading guilty, Rule 11(c)(1), and the important constitutional rights he is waiving including the right to a trial, Rules 11(c)(3), (4)." *United States v. Hyde*, 520 U.S. 670, 674 (1997). "Subdivision (d) says: The court shall not accept a plea of guilty . . . without first, by addressing the defendant personally in open court, determining that the plea is voluntary." *Id.* Once a court has taken the steps to ensure that the defendant has full knowledge of to what he or she is pleading guilty, the associated consequences, and the maximum penalty they may face by pleading guilty, the court "may, in its discretion, accept a defendant's guilty plea." *Id.*

### B.   *Motion to Withdraw Plea of Guilty*

Despite the measures courts take to ensure that an entry of a plea of guilty is knowing and voluntary, occasionally defendants will ask courts to allow them to withdraw their pleas of guilty. Under Federal Rule of Criminal Procedure 11(d), "[a] defendant may withdraw a plea of guilty or nolo contendere: (1) before the court accepts the plea, for any reason or no reason; or (2) after the court accepts the plea, but before it imposes sentence if: . . . (B) the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(1) – (2)(B).

It is well settled that "[a] defendant does not have an absolute right to withdraw his guilty plea. Instead, the district court may, in its discretion, permit withdrawal before sentencing if the defendant can show a 'fair and just reason,'" *United States v. Lord*, 915 F.3d 1009, 1014 (5th Cir. 2019) (citation omitted). "In determining whether there is a fair and just reason for withdrawal, the district court should consider the factors identified in *United States v. Carr*." *United States v. Buholtz*, 562 Fed.Appx. 213, 214 (5th Cir. 2014). The court in *Carr* set out the factors that judges are to consider when determining whether a criminal defendant should be allowed to withdraw their plea of guilty.

> The factors that should be considered when applying this standard are: (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Carr*, 740 F.2d 339, 343—344 (5th Cir. 1984). In making their determination, courts should consider the "totality of the circumstances," *Carr*, 740 F.2d at 344, and the Fifth Circuit has advised district courts that "no single factor or combination of factors mandates a particular result," *Lord*, 915 F.3d at 1014. Further, "[t]he district court is not required to make explicit findings as to each of the *Carr* factors." *Id*. And finally, "the defendant has the burden of proving the withdrawal is justified." *Carr*, 740 F.2d at 344.

## C.    *Changes in the Law*

In order to allow a defendant to withdraw their plea of guilty, the defendant must give the court a "fair and just reason" to do so. *See* Fed. R. Crim. P. 11(d)(1)—(2)(B). Different circuits

have interpreted whether a change in the law constitutes a "fair and just reason" to allow a

defendant to withdraw their plea of guilty.  In *Alvarado*, a California district court found that

"[a]n intervening change in the law provide[d] a 'just and fair' reason to permit Alvarado to

withdraw his guilty plea," *United States v. Alvarado*, 622 F.Supp.2d 988, 992 (E.D. Cal. 2009).

However, courts within the Fifth Circuit have been more reluctant to allow a defendant to

withdraw their plea of guilty based on a change in the law.

When courts in the Fifth Circuit "have allowed defendants to withdraw guilty pleas based

upon intervening changes in the law, those intervening changes have 'modif[ied] the substantive

criminal law defining the offense.'  In other words, such modifications have decriminalized a

defendant's alleged conduct," *United States v. Meehan Hughes*, No. 3:15-CR-11, 2016 WL

4527556 at *4 (S.D. Tex. Aug. 30, 2016).  The court in *Hardy* specifically held that "where

developments in the law later expand a right that a defendant has waived in a plea agreement, the

change in law does not suddenly make the plea involuntary or unknowing or otherwise undo its

binding nature.  A valid plea agreement, after all, requires knowledge of existing rights, not

clairvoyance," *United States v. Hardy*, 838 Fed.Appx. 68, 75 (5th Cir. 2020) (internal citations

omitted).

### D.    *Vacated Judgments*

When a defendant's previous judgment has been vacated, it has the effect of placing the

defendant back in the same place he was, had judgment never been entered.  In *United States v.*

*Williams*, 904 F.2d 7, 8 (7th Cir. 1990), the court held that when a judgment is vacated "the effect

is to nullify the judgment entirely and place the parties in the position of no trial having taken

place at all," *Brisco v. Stinar*, No. 19-CV-7233, 2020 WL 7027719 at *8 (W.D. Tex. Nov. 30, 2020).

### E.    *Facial and As-Applied Constitutional Challenges*

There are two types of constitutional challenges that a court might have to wrangle with when determining if a particular law or statute is constitutional: facial and as-applied. Unlike a facial challenge, an as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right," *Binderup v. Attorney General United States of America*, 836 F.3d 336, 345 (3d Cir. 2016) (internal citation omitted). On the other hand, to sustain a facial challenge "the challenger must establish that no set of circumstances exists under which the [statute] would be valid," *United States v. McGinnis*, 956 F.3d 747, 752 (5th Cir. 2020). This circuit has held that "facial challenges to the constitutionality of statutes should be granted sparingly and only as a last resort." *Id.* at 752–53.

### F.    *Motion to Dismiss*

The Federal Rules of Criminal Procedure allow a party to "raise by pretrial motion any defense objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). One such motion is a "Motion to Dismiss", in which a defendant may allege in a pretrial motion that there is "a defect in the indictment," such as a "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). Typically a "post-conviction motion to dismiss a federal indictment should be construed a motion brought pursuant to [28 U.S.C. §] 2255," *United States v. Luna*, No. DR-06-CR-972, 2014 WL 12861730 at *1 (W.D. Tex. Jan. 9, 2014), however,

8

for purposes of the Court's reconsideration of the instant motion, it will be construed as a motion

to dismiss pursuant to Federal Rule of Criminal Procedure 12(b)(3).[2]

District courts have the authority to dismiss indictments. "The supervisory powers of []

district court[s] allow it to impose the extreme sanction of dismissal of an indictment with

prejudice only in extraordinary circumstances." *United States v. Fulmer*, 722 F.2d 1192, 1195

(5th Cir. 1983). "Because a question of law presented in a case involving undisputed facts can

be determined without a trial of the general issue, Rule 12 authorize[s] the district court to rule

on [the] motion to dismiss." *United States v. Flores*, 404 F.3d 320, 325 (5th Cir. 2005).

### G.    *The Second Amendment*

Second Amendment jurisprudence is among some of the most complicated that lower

courts around the country grapple with.  This opinion will spend some time discussing the

evolution of Second Amendment jurisprudence, as well as where it stands today, and the specific

statute at issue in the instant case.

### i.    In General

The Second Amendment states that "[a] well regulated Militia, being necessary to the

security of a free State, the right of the people to keep and bear Arms, shall not be infringed,"

U.S. Const. amend. II.  In *District of Columbia v. Heller*, the Supreme Court held that "[l]ike

most rights, the right secured by the Second Amendment is not unlimited," 554 U.S. 570, 626

(2008).  "Commentators and courts routinely explained that the right was not a right to keep and

carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.*  The

---

[2] The Fifth Circuit Court of Appeals has vacated the judgment in the instant case and has remanded the case back to the trial court.  For that reason, the Motion to Dismiss must be construed as a motion to dismiss pursuant to Fed. R. Crim. P. 12(b)(3) as opposed to a motion to dismiss pursuant to 28 U.S.C. § 2255.

Court's decision in *Heller* made "clear that [the Second Amendment] right is deeply rooted in this Nation's history and tradition," *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 768 (2010) (citations omitted).

Various cases following *Heller* and *McDonald* affirmed that the Second Amendment right is a right that is held "by the people," *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023). The court in *Daniels* went on to say that this phrase 'by the people' "unambiguously refers to all members of the political community, not an unspecified subset." *Id.* In fact, the *Daniels* court makes it a point to say that "the Bill of Rights uses the phrase 'the people' five times. In each place, it refers to all members of our political community, not a special group of upright citizens." *Id.* These previous cases definitively hold that the Supreme Court "recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense," *New York State Rifle & Pistol Association, Inc. v. Bruen*, 587 U.S. 1, 8–9 (2022).

Up until 2022, lower courts had analyzed Second Amendment issues according to *Heller* and *McDonald*. In 2022, the Supreme Court decided *New York State Rifle & Pistol Association, Inc. v. Bruen*, commonly referred to as *Bruen*, which changed the landscape of Second Amendment jurisprudence as we know it. This Court will analyze Defendant's Motion under *Bruen* later in the opinion.

### ii.    *Bruen*

After the decisions in *Heller* and *McDonald*, appellate courts around the United States developed a "two-step framework for analyzing Second Amendment challenges that combines history with means-ends scrutiny." *Bruen*, 587 U.S. at 17. Justice Thomas believed that while

10

popular, the two-step system was "one step too many." *Id.* In its decision in *Bruen*, the Supreme

Court created a new test for lower courts to follow. It held that "*Heller* and *McDonald* do not

support applying means-end scrutiny in the Second Amendment context. Instead, the

government must affirmatively prove that its firearms regulation is part of the historical tradition

that delimits the outer bounds of the right to keep and bear arms." *Id.* at 19. Justice Thomas then

went on to clearly define the test for analyzing Second Amendment issues. The Court

"reiterate[d] that the standard for applying the Second Amendment is as follows: When the

Second Amendment's plain text covers an individual's conduct, the Constitution presumptively

protects that conduct." *Id.* at 24. Following this, "[t]he government must then justify its

regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm

regulation. Only then may a court conclude that the individual's conduct falls outside the Second

Amendment's 'unqualified command.'" *Id.*

The Supreme Court also gave guidance for the lower courts to determine "whether a

historical regulation is a proper analogue for a distinctly modern firearm regulation," which

would require a determination be made of whether the two regulations are 'relevantly similar.'"

*Id.* at 28–29.

> To be clear, analogical reasoning under the Second Amendment is neither a
> regulatory straightjacket nor a regulatory blank check. On the one hand, courts
> should not 'uphold every modern law that remotely resembles a historical analogue,'
> because doing so risk[s] endorsing outliers that our ancestors would never have
> accepted. On the other hand, analogical reasoning requires only that the
> government identify a well-established and representative historical analogue, not
> a historical twin.

*Bruen*, 587 U.S. at 30 (internal citations omitted). Lower courts around the country have already

begun implementing the new guidance set forth in *Bruen*. In *Daniels*, the Fifth Circuit

11

emphasized that "two laws are 'relevantly similar' if they share a common 'why' and 'how'; they must both address a comparable problem (the 'why') and place a comparable burden on the rightsholder (the 'how')." *Daniels*, 77 F.4th at 342; *see also United States v. Connelly*, 117 F.4th 269, 274 (5th Cir. 2024) ("The government need not [present] a dead ringer or 'historical twin to be successful; it can also present an analogous historical regulation with a sufficiently similar why and how.").

## IV.   ANALYSIS

### A. Since the Fifth Circuit vacated Defendant Adrian Gil, III's judgment, his case, in effect, returns to the trial court as if he had not been convicted.

Defendant pleaded guilty to the single-count indictment in the above-referenced case on November 10, 2022, after he was charged with being an unlawful drug user in possession of a firearm, in violation of 18 U.S.C. § 922(g)(3). *See* Minute Entry for Re-arraignment, ECF No. 30. Defendant was subsequently sentenced to 35 months of imprisonment and three years of supervised release on July 19, 2023. Judgment and Commitment, ECF No. 46. On May 15, 2024, the United States Court of Appeals for the Fifth Circuit issued a mandate in which it "ordered and adjudged that the judgment of the District Court is vacated, and the cause is remanded to the District Court for further proceedings in accordance with the opinion of this Court." Judgment/Mandate of the United States Court of Appeals for the Fifth Circuit, ECF No. 70.

In *United States v. Williams*, 904 F.2d 7, 8 (7th Cir. 1990), the court held that when a judgment is vacated "the effect is to nullify the judgment entirely and place the parties in the position of no trial having taken place at all," *Brisco v. Stinar*, No. 19-CV-7233, 2020 WL 7027719 at *8 (W.D. Tex. Nov. 30, 2020). For this reason, Defendant's case returns to this Court

12

as if judgment had never been entered, and any sentence this Court had previously imposed will now be nullified.

**B. Based on the "Carr" factors, Defendant Adrian Gil, III has provided the Court with a "fair and just reason" to allow him to withdraw his guilty plea.**

"The standard for determining whether or not a defendant may withdraw his guilty plea prior to sentencing is whether 'for any reason the granting of the privilege seems fair and just.'" *Carr*, 740 F.2d at 343. To determine this standard, courts analyze various factors commonly known as the "*Carr* Factors." *See Carr*, 740 F.2d at 343-44. Courts, in making their determination, should consider the "totality of the circumstances," *Carr*, 740 F.2d at 344. "[N]o single factor or combination of factors mandates a particular result," *Lord*, 915 F.3d at 1014, and, "[t]he district court is not required to make explicit findings as to each of the *Carr* factors." *Id.* And finally, "the defendant has the burden of proving the withdrawal is justified." *Carr*, 740 F.2d at 344. The Court notes the Government "[did] not address the withdrawal issue," in either its Response in Opposition to Defendant's Motion to Dismiss the Indictment, ECF No. 43, or its Supplemental Brief, ECF No. 78.

**i.  Whether or not the defendant has asserted his innocence**

The first *Carr* factor weighs neither in favor nor against allowing Defendant to withdraw his plea. "An assertion of innocence alone is far from being sufficient to overturn denial of a withdrawal motion," *United States v. Vergott*, 662 Fed. App'x 320, 325 (5th Cir. 2016). According to the Court's record, it does not appear that Defendant explicitly asserted his innocence. However, shortly after he pleaded guilty, Defendant did assert that 18 U.S.C. § 922(g)(3) was unconstitutional as applied to him and has moved to dismiss the charges. *See*

Mot. 1, 9, ECF No. 39.  While Defendant did not explicitly assert his innocence, he did file his request to withdraw his plea of guilty within a couple months of his plea hearing.

ii.   **Whether or not the government would suffer prejudice if the withdrawal motion were granted**

The second *Carr* factor weighs in favor of allowing Defendant to withdraw his plea. "*Carr* made clear that the absence of prejudice to the Government does not necessarily justify reversing the district court's decision to deny a motion to withdraw a guilty plea." *Lord*, 915 F.3d at 1015.  Although neither Defendant nor the Government made any arguments regarding this factor, the Court finds that the Government would not suffer prejudice if the withdrawal motion were granted given the current state of Second Amendment jurisprudence at the Fifth Circuit.

iii.   **Whether or not the defendant has delayed in filing his withdrawal motion**

The third *Carr* factor weighs neither in favor nor against allowing Defendant to withdraw his plea. "The longer a defendant delays in filing a withdrawal motion, the more substantial reasons he must proffer in support of his motion." *Carr*, 740 F.2d at 344.  "The rationale for allowing a defendant to withdraw a guilty plea is to permit him to undo a plea that was unknowingly made at the time it was entered." *Id.* at 345.  Here, Defendant pleaded guilty on November 10, 2022, *see* Minute Entry for Re-arraignment, ECF No. 30, and he filed the instant motion, ECF No. 39, on February 26, 2023.

While there was some delay by Defendant in filing his Motion, there were major changes in the legal landscape regarding Second Amendment jurisprudence happening simultaneously in the Fifth Circuit.  On February 2, 2023, the Fifth Circuit struck down 18 U.S.C. § 922(g)(8) as

14

facially unconstitutional in *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023).[3]  Because *Rahimi* significantly altered Second Amendment jurisprudence within the Fifth Circuit, and because Defendant relied on the Fifth Circuit's opinion in *Rahimi* when he filed his Motion, the Court finds that the delay in filing his motion to withdraw is reasonable, and will therefore not count the delay against him.

    iv.    **Whether or not the withdrawal would substantially inconvenience the court**

The fourth *Carr* factor is neutral in allowing Defendant to withdraw his plea.  This factor considers whether or not the withdrawal would substantially inconvenience the court. *Carr*, 740 F.2d at 344.  The Fifth Circuit has previously determined that "[w]hen . . . the district court has already reviewed the PSR and other materials, a motion to withdraw is disruptive to the trial docket and inconveniences the court." *Lord*, 915 F.3d at 1015.  Here, Defendant pleaded guilty to this charge on November 10, 2022, and thereafter the United States Probation Office began to prepare its "Presentence Investigation Report" ("PSR") for Defendant.  Sealed Presentence Investigation Rep., ECF No. 36.  This Court reviewed the PSR in its entirety and sentenced Defendant based on the recommendations presented in the PSR.  While the Court did spend significant time reviewing the PSR in preparation of Defendant's sentencing, given the constantly changing Second Amendment jurisprudence, the Court does not believe that reconsidering Defendant's Motion substantially inconveniences the Court.

---

[3] *United States v. Rahimi*, 59 F.4th 163 (5th Cir. 2023) was withdrawn and superseded by *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023) on March 2, 2023, and then subsequently reversed and remanded by the United States Supreme Court in *United States v. Rahimi*, 144 S.Ct. 1889 (2024).

v.    **Whether or not the close assistance of counsel was available**

The fifth *Carr* factor weighs neither in favor of nor against allowing Defendant to withdraw his plea. "[W]hether a defendant had close assistance of counsel does not turn on whether counsel found legal authority to support a viable defense. In weighing this factor, we look to whether counsel was available to the defendant throughout the proceedings." *Lord*, 915 F.3d at 1015–1016. In this case, Defendant had the close assistance of counsel both before and after he pleaded guilty. Defendant's trial counsel filed multiple substantive motions on his behalf and was available to him throughout the duration of his case in the trial court. *See, e.g.*, Motion for Downward Departure or Variance, ECF No. 35; Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment, ECF No. 39; Defendant's Notice of Appeal, ECF No. 48; Motion for New Trial, ECF No. 53; Motion for Appellate Bond, ECF No. 54. These motions filed by Defendant's counsel both before and after his plea and sentence are indications that he had close assistance of counsel. The Government does not make any arguments about this factor.

vi.    **Whether or not the original plea was knowing and voluntary**

The seventh *Carr* factor does not weigh in favor nor against allowing Defendant to withdraw his plea. "To enter a knowing and voluntary guilty plea, a defendant must have full knowledge of what the plea connoted and of its consequences." *Hardy*, 838 Fed.Appx. at 74. In *Vergott*, the court found that "the district court substantially complied with Rule 11 by informing Vergott of the nature of the charge alleged in the indictment, the constitutional rights he was waiving by pleading guilty, and the maximum possible sentence he faced." *Vergott*, 662 Fed. App'x at 326.

Here, the Court believes that Defendant had full knowledge of the plea and of its

consequences at the time that he pleaded guilty. The following colloquy, though not in its

entirety, took place between the Court and Defendant. Transcript of Plea Hearing (Tr.) at 8–18,

*United States v. Gil*, No. 3:22-cr-00773 (W.D. Tex. filed Nov. 10, 2022), ECF No. 57.

> Q [The Court]: Now, having discussed these rights with you I need to know first
>
> of all if you have understood all of them . . . Mr. Gil?
>
> A [Defendant]: Yes, Your Honor.
>
> Q: Having understood these rights, are you willing to waive them and continue
>
> with this plea of guilty . . . Mr. Gil?
>
> A: Yes, Your Honor.
>
> Q: Mr. Gil, if you enter a plea of guilty to having been a drug user in possession
>
> of a firearm, the maximum possible sentence that you may receive is incarceration
>
> of 0 to 10 years, and/or a fine of 0 to $250,000, plus supervised release of up to 3
>
> years, and a $100 assessment to the Crime Victim's Fund. Do you understand
>
> what the maximum possible sentence can be if you enter a plea of guilty here
>
> today, Mr. Gil?
>
> A: Yes, Your Honor.
>
> Q: Now . . . did your attorney inform you of what these Sentencing Guidelines
>
> are? Did your attorney inform you that even though the guidelines are advisory
>
> ordinarily the Court will follow them? And, did your attorney also advise you
>
> how these guidelines are likely to be applied to you in your case . . . Mr. Gil?
>
> A: Yes, Your Honor.

17

Q: Do you understand what the Government would be obligated to prove for you

to be convicted of being a drug user in possession of a firearm, Mr. Gil?

A: Yes, Your Honor.

Q: To the single-count Indictment charging you with drug user in possession of a

firearm, how do you plead, sir, guilty or not guilty?

A: Guilty, Your Honor.

Based on the excerpt of the transcript from the plea hearing, the Court is confident that Defendant

knowingly and voluntarily entered into his plea.

**vii.    Whether or not the withdrawal would waste judicial resources**

The eighth *Carr* factor weighs in favor of allowing Defendant to withdraw his plea. The

district court is in the best position to know the effect that withdrawal has on its resources.

*United States v. McKnight*, 570 F.3d 641, 649 (5th Cir. 2009). Neither Defendant nor the

Government has made any specific arguments with regard to the waste of judicial resources.

This Court does not believe that allowing Defendant to withdraw his plea of guilty would waste

judicial resources. The Court is of the opinion that reconsideration of the Motion is the just

action and finds that this factor counts in favor of allowing Defendant to withdraw his guilty

plea.

**viii.    The reason why defenses advanced later were not proffered at the time of the
original pleading**

The Court will give the most weight to this final factor, and finds it weighs in favor of

allowing Defendant to withdraw his plea. As the Court has alluded to in other parts of this

opinion, the legal landscape with respect to the Second Amendment has changed drastically over

the last few years, specifically around the time that Defendant plead guilty and was sentenced.

18

In the past two years alone, the Fifth Circuit and the United States Supreme Court have heard and considered the following cases: *Daniels*[4], *Rahimi*[5], and *Bruen*[6]. These cases have changed the law when it comes to the Second Amendment, and in the case of *Daniels*, have challenged the constitutionality of the very statute under which Defendant is charged.

Simply put, the main reason why defenses advanced later were not proffered at the time of the original pleading is because the defenses did not necessarily exist at the time that Defendant pleaded guilty. While the Fifth Circuit has not always agreed that a change in intervening law provides a fair and just reason to allow a Defendant to withdraw their plea of guilty, other courts have. In *Alvarado*, a California district court found that "[a]n intervening change in the law provide[d] a 'just and fair' reason to permit Alvarado to withdraw his guilty plea," *Alvarado*, 622 F.Supp.2d at 992.

This Court now has a fuller picture of the Second Amendment jurisprudence as it stands today, and has reconsidered its position in allowing Defendant to withdraw his plea of guilty in light of the changes.

ix.    **Conclusion**

Considering the totality of the circumstances in the above-referenced cause, the Court is of the opinion that the factors weigh in favor of allowing Defendant to withdraw his plea of guilty, and, that Defendant has shown a "fair and just" reason to allow him to withdraw his plea of guilty. Therefore, the Court will allow Defendant to withdraw his plea of guilty.

---

[4] *United States v. Daniels*, 77 F.4th 337, 342 (5th Cir. 2023), cert. granted.
[5] *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), *United States v. Rahimi*, 144 S.Ct. 1889 (2024).
[6] *New York State Rifle & Pistol Association, Inc. v. Bruen*, 587 U.S. 1, 8–9 (2022).

**C. *The statute under which Defendant is charged, 18 U.S.C. § 922(g)(3), is unconstitutional as applied to him, and will therefore be dismissed.***

Defendant argues that the statute under which he is charged, 18 U.S.C. § 922(g)(3), is both unconstitutional as applied to him as well as facially unconstitutional. Mot. 8, ECF No. 39. This statute makes it "unlawful for any person who is an unlawful user of or addicted to any controlled substance . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(3).

Defendant argues in his Motion that "[i]f the Government is unable to produce evidence of sufficiently similar historic regulations, § 922(g)(3) must be found to be unconstitutional on its face or, at least, as applied to Mr. Gil." Mot. 9, ECF No. 39. The Government, on the other hand, argues that "[a]s applied to Gil, Section 922(g)(3) is constitutional. Section 922(g)(3)'s application to Gil is consistent with the historical tradition of disarming regular users of marijuana." Government's Supplemental Brief ("Gov't Suppl. Br.") 6, ECF No. 78.

An as-applied challenge "does not contend that a law is unconstitutional as written but that its application to a particular person under particular circumstances deprived that person of a constitutional right," *Binderup*, 836 F.3d at 345 (internal citation omitted). Whereas to sustain a facial challenge, "the challenger must establish that no set of circumstances exists under which the [statute] would be valid," *McGinnis*, 956 F.3d at 752. This circuit has held that "facial challenges to the constitutionality of statutes should be granted sparingly and only as a last resort." *Id.* at 752–53. Defendant has not met his burden to demonstrate to the Court that "no set of circumstances exist[] under which the [statute] would be valid." *Id.* at 752. For this reason,

the Court will proceed to only analyze 18 U.S.C. § 922(g)(3) under the "as-applied" challenge framework.

The Supreme Court established in *Heller* that "the Second Amendment right is not unlimited . . . It is not a right to keep and carry any weapon whatsoever and for whatever purpose." *Heller*, 554 U.S. at 626–27. In *McDonald,* the Court established that "the right to bear arms was regarded as a substantive guarantee, not a prohibition that could be ignored so long as the States legislated in an evenhanded manner." *McDonald*, 561 U.S. at 780. Between the two of these cases, a two-step framework for evaluating Second Amendment issues emerged. Historically, lower courts had used "two-step framework for analyzing Second Amendment challenges that combines history with means-ends scrutiny," that was established in *Heller* and *McDonald*. *Bruen*, 587 U.S. at 17. The Supreme Court has now instructed lower courts to analyze Second Amendment challenges pursuant to the new test in *Bruen*, which this Court intends to follow. "[T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct . . . The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 587 U.S. at 24.

### i.    Defendant is part of "the people" for Second Amendment purposes and his conduct is therefore protected

In his Motion, Defendant argued that he is part of "the people" for Second Amendment purposes, and that his conduct is covered by the Second Amendment. Mot. 5, ECF No. 39. He states "that 'the people' in the Second Amendment unambiguously refers to 'all members of the

political community, not an unspecified subset.'" *Id.* When the Second Amendment's plain text

covers an individual's conduct, the Constitution presumptively protects that conduct."

Supplemental Brief of Defendant-Appellant ("Def.'s Suppl. Br.") 8, ECF No. 79. The

Government counters that Defendant is not part of "the people" under the *Bruen* framework

"because illegal drug users and addicts are, by definition, not "law-abiding" citizens covered by

the amendment's text." Resp. 3, ECF No. 43.

  The Government's argument is misplaced at this part of the analysis. The first part

addresses whether or not Defendant enjoys a presumption of protection by the Second

Amendment. The coverage of the Second Amendment is broad at this stage of the analysis and

the language of the Second Amendment is clear on this point: "[T]he right of the people to keep

and bear Arms, shall not be infringed." U.S. Const. amend. II. "The right to bear arms is held by

'the people.'" *Daniels*, 77 F.4th at 342. The Bill of Rights "uses the phrase 'the people' five

times. In each place, it refers to all members of our political community, not a special group of

upright citizens." *Id.* The Court in *Heller* also "concluded that the Second Amendment right is

exercised individually and belongs to all Americans." *United States v. Connelly*, 117 F.4th 269,

274 (5th Cir. 2024). For these reasons, the Court disagrees with the Government and finds that

Defendant *is* part of the people for Second Amendment purposes, and his conduct is therefore

protected.

  ii. **The Government has not justified the prohibition in 18 U.S.C. § 922(g)(3) by**
    **demonstrating that it is consistent with the Nation's historical tradition of**
    **firearm regulation as applied to Defendant**

  Now that it has been established that Defendant's conduct is protected under the Second

Amendment, the Court moves to the next stage of the analysis. After making the determination

that an individual's conduct is protected by the Second Amendment, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 587 U.S. at 24. The Court finds that the Government has not met its burden, and therefore Defendant's conduct does not fall outside the Second Amendment's "unqualified command."

Defendant argues that "there is no evidence that he was part of a dangerous group" that was "analogous to political and religious dissidents who could be disarmed at the time the Second Amendment was ratified." Def.'s Suppl. Br. 13, ECF No. 79. He further argues that "the underlying historical evidence of disarming generally "dangerous" people does not support a finding that said laws also applied to drug users or addicts." Mot. 9, ECF No. 39. The Government disagrees and states that "§ 922(g)(3) is consistent with the right to bear arms because it squares with historical tradition." Resp. 15, ECF No. 43. The Government goes on to say that "[l]ongstanding historical tradition views intoxication as a condition rendering firearm possession dangerous, and accordingly restricting the firearm rights of those who become intoxicated." *Id.* at 18. It also alleges that "[t]he Founding generation recognized that those who regularly became intoxicated threatened the social and political order." Gov't Suppl. Br. 8, ECF No. 78.

"Like all analogical reasoning, determining whether a historical regulation is proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Bruen*, 587 U.S. at 28–29. "[A]nalogical reasoning requires only that the government identify a well-established and representative historical analogue, not a

historical twin." *Id.* at 30. "So, even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* Here, the Government has not identified a class of persons at the Founding who were "dangerous" for reasons comparable to marijuana users, like Defendant.

The Fifth Circuit made clear that history and tradition do not support disarming someone solely based on past drug use. In *Connelly*, the Fifth Circuit held that "our history and tradition may support some limits on a presently intoxicated person's right to carry a weapon . . . but they do not support disarming a sober person based solely on past substance abuse." *Connelly*, 117 F.4th at 272. Because "[f]ounding-era laws concerning drugs and alcohol were few, and primarily concerned with (1) misuse of weapons while intoxicated and (2) disciplining state militias," these laws cannot be an effective analogue to 18 U.S.C. § 922(g)(3). *Id.* at 280. And the Government in the instant case "provides no meaningful response to the fact that neither Congress nor the states disarmed alcoholics, the group most closely analogous to marijuana users in the 18th and 19th centuries." *Id.* at 279.

"[T]here is no historical justification for disarming a sober citizen not presently under an impairing influence." *Id.* at 276. "Repeat marijuana users, like repeat alcohol users, are of sound mind upon regaining sobriety, whereas those adjudged severely mentally ill often require extensive treatment and follow-up examination before they can be said to be of sound mind again." *Id.* at 276–277. When taken together, the historical statutes that are the closest analogue to 18 U.S.C. § 922(g)(3) "provide support for banning the carry of firearms while actively intoxicated," but even still, "§ 922(g)(3) is much broader than historical intoxication laws." *Id.* at 281.

"The history and tradition before us support, at most, a ban on carrying firearms while an individual is presently under the influence." *Connelly*, 117 F.4th at 282.  Here, while the Government goes to great lengths to disclose that Defendant "admitted being a daily user of marihuana since age 14" and that Defendant "just like[d] good weed," Resp. 6, ECF No.43, it does nothing in the way of proving that Defendant was intoxicated by marijuana at the time of this incident, or at the time he was arrested.  In line with the Fifth Circuit's reasoning in *Connelly,* this Court agrees that "based on habitual or occasional drug use, § 922(g)(3) imposes a far greater burden on [Defendant's] Second Amendment rights than our history and tradition of firearms regulation can support." *Connelly*, 117 F.4th at 282.

### iii.    Conclusion

Defendant is part of "the people" whose conduct is covered and protected by the Second Amendment.  Because he is part of "the people," the Government had the burden to identify a historical analogue similar enough to 18 U.S.C. § 922(g)(3) to show that individuals like Defendant were disarmed at the time of the Founding.  The Government failed to meet its burden.  Therefore, the Court finds that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to Defendant.

## V.    CONCLUSION

On this day, the Court reconsidered Defendant Adrian Gil, II's "Motion to Withdraw His Guilty Plea and Dismiss Indictment," filed on February 26, 2023, ECF No. 39.  Defendant argues that 18 U.S.C. § 922(g)(3) is unconstitutional as applied to him, and therefore the Court should allow him to withdraw his plea of guilty as well as dismiss his indictment in its entirety.  The Government opposes Defendant's requests and says that the history and tradition of the United

States Second Amendment jurisprudence supports disarming individuals like Defendant. The Court disagrees with the Government. The Court finds that Defendant has provided a fair and just reason to allow him to withdraw his plea of guilty, and the Government has not met its burden to demonstrate that 18 U.S.C. § 922(g)(3) has a historical analogue similar enough to justify disarming Defendant. The Court will therefore allow Defendant to withdraw his plea of guilty and dismiss the indictment against Defendant with prejudice, because the statute under which he is charged is unconstitutional as applied to him.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Adrian Gil, II's previous "Motion to Withdraw His Guilty Plea and Dismiss Indictment," ECF No. 39, is **GRANTED**.

**IT IS FURTHER ORDERED** that the previous "Memorandum Opinion and Order Denying Defendant's Motion to Withdraw His Guilty Plea and Dismiss Indictment," ECF No. 44, is **VACATED**.

**IT IS FURTHER ORDERED** that the "Sealed Indictment" under which Defendant has been charged, ECF No. 4, is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the duplicative "Motion to Dismiss," filed by Defendant Adrian Gil, II on October 24, 2024, ECF No. 80, is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Government's "Motion to Dismiss," filed on November 21, 2024, ECF No. 84, is also **DENIED AS MOOT**.

IT IS FINALLY ORDERED that Defendant Adrian Gil, II is RELEASED from any

pretrial or bond conditions under which he had been previously subject.

SIGNED this _30ᵀᴴ_ day of **December 2024**.

_____

THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE

## **CERTIFICATE OF SERVICE**

On January 2, 2025, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Western District of Pennsylvania, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Joshua Prince
Joshua Prince, Esq.
Attorney for Plaintiffs